**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:09cv50**

| | |
|---|---|
| **JULLA E. SCRUGGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

_____

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary

Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment

[Doc. 12].

**I.    PROCEDURAL HISTORY**

The Plaintiff Julla Scruggs applied for a period of disability and Social

Security disability insurance benefits on April 11, 2006, alleging that she had

become disabled as of November 21, 2005.  [Transcript ("T.") 105-07].  The

Plaintiff's application was denied initially and on reconsideration.  [T. 82-88].

A hearing was held before Administrative Law Judge ("ALJ") Ivar Avots on

September 24, 2008.  [T. 34-78].  On March 2, 2009, the ALJ issued a

decision denying the Plaintiff benefits. [T. 10-17]. The Appeals Council accepted additional evidence from the Plaintiff, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation

4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet or equal a listing but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fourth step.

## IV.    FACTS AS STATED IN THE RECORD

The Plaintiff was 57 years old at the time of the ALJ's hearing. [T. 105, 34]. She completed the ninth grade and has no GED. [T. 38]. She last worked as a housekeeper for a nursing home, where for a period of time she also had supervisory duties. [T. 47]. Her prior work includes work as a housekeeper for other employers, and as a fast food worker at Bojangles. [T. 49]. She currently receives long term disability benefits from her employer.

Plaintiff alleges that she is disabled by stinging and burning in her back, legs and feet; nerve problems; and knee problems that led to two knee surgeries. [T. 43].

Plaintiff injured her knee on June 18, 2005 in a fall at work. She received treatment in the Emergency Room of Westcare Health System and was put in a splint and given crutches. [T. 259-63]. Plaintiff began to see Quayle Neslen, M.D. of Sylva Orthopaedics for treatment of her knee injury on June 28, 2005. An MRI of the left knee performed on July 11, 2005 showed a possible tear in the medial meniscus. In all other respects, the knee was normal. [T. 297]. After several months of treatment with medication and injections, Plaintiff underwent knee surgery in October 2005. In her first post-surgical visit on November 3, 2005, Plaintiff complained that her knee was "killing" her and that walking was very painful. [T. 348]. By November 22, 2005, however, Plaintiff's physical therapist reported to Dr. Neslen's staff that the Plaintiff admitted to "overdoing it" at home such that her knee hurt too much to participate in physical therapy. [T. 347]. A physical examination on November 29, 2005 noted fair quad strength and some effusion. [T. 346].

Plaintiff continued to complain of pain and swelling in her left knee. In December 2005, it was noted that Plaintiff stopped attending physical therapy because she "thought she lost her insurance." [T. 345]. She underwent a second knee surgery on January 11, 2006. At a follow-up visit on January 24, 2006, she reported doing "much better." No effusion was noted at that time. [T. 343]. During a visit with Dr. Neslen on February 21, 2006, Plaintiff

reported that she was walking one mile, two to three times per week. She reported occasional swelling in her knee and pain, for which she took Celebrex. [T. 342]. In a visit in March 2006, the Plaintiff reported swelling and stinging in her left knee. She reported taking Celebrex for pain and occasionally Vicodin. Dr. Neslen again recommended physical therapy. [T. 341]. Physical therapy records indicate, however, that Plaintiff asked to be discharged after only three sessions, claiming that her doctor had told her that she was going to have a total knee replacement. She further reported that physical therapy was making her pain and swelling worse. [T. 352-57].

In a visit on June 20, 2006, Plaintiff displayed full range of motion of the left hip without increased pain, and no effusion in her left knee. She was assessed with probable sympathetic reflex dystrophy of the left leg, and referred to Dr. Lewis, a pain specialist; however, there are no treatment notes in the record regarding this referral. [T. 381].

In a visit with Dr. Neslen on August 22, 2006, the Plaintiff reported burning and tingling in both of her legs, and that she had to walk with a cane most of the time. A physical examination revealed no effusion and a range of motion 0-95 degrees bilaterally. [T. 392]. On October 24, 2006, she reported no change in her pain. Dr. Neslen advised her that she would eventually need a total knee replacement. [T. 391].

In a visit with Dr. Neslen on January 19, 2007, it was noted that Plaintiff was noncompliant with her medication from Dr. Lewis. At that time, she reported taking Vicodin and Mobic for pain. [T. 390].

An examination of Plaintiff's knee on August 24, 2007 showed no effusion and a good range of motion. Her complaints of pain were the same. It was noted that she ambulated with a cane and had an antalgic gait. [T. 388]. In a visit with Dr. Neslen on March 4, 2008, Plaintiff again complained "burning and tingling" in the back of her legs. [T. 387].

Plaintiff also has a history of back pain. A July 24, 2007 MRI showed moderate disc protrusion at L5-S1 on the right and a mild left foraminal disc bulge, facet arthrosis, and left foraminal/lateral recess stenosis at L4-5. [T. 415]. Plaintiff sought treatment from Dr. Lewis, who performed spinal injections, but Plaintiff reported that these injections did not help. Eventually, Plaintiff was referred to Dr. Boatright, an orthopedic specialist, who performed a right lumbar discectomy on December 14, 2007. [T. 404].

On January 31, 2008, a physical examination demonstrated bilateral leg strength of five on a five point scale (5/5) and a normal gait. Her straight leg raising test was normal (negative). It was noted that the Plaintiff was using a cane to walk. [T. 400]. In a follow-up visit on April 3, 2008, Plaintiff again

demonstrated 5/5 bilateral strength, a normal gait, and negative straight leg raising. It was further noted that Plaintiff was walking independently. [T. 401]. An April 30, 2008 MRI showed post-surgical change at L5-S1 without evidence of recurrent disc herniation, mild enhancing granulation around the right nerve root, facet arthropathy at L4-L5 contributing to mild lateral recess and borderline left foraminal narrowing, not significantly changed. [T. 412-13]. Plaintiff continued to complain of back pain. A follow-up MRI in May 2008 revealed no signs of recurrent disc herniation and no sign of ongoing nerve compression. [T. 445].

Dr. Neslen provided periodic status and out-of-work statements for The Hartford, Plaintiff's disability carrier. In these statements, he indicated that the onset of Plaintiff's knee condition was June 2005 [T. 437], and that in his opinion, this condition rendered her unable to work from January 11, 2006, the date of her second knee surgery. [T. 432, 442]. In these forms, he consistently noted the following limitations: occasional lifting of no more than ten pounds; never climbing, stooping, kneeling or crawling; occasional balancing, crouching, and bilateral reaching; and frequent handling, fingering, and feeling. He further indicated that she was to do no lifting, carrying, pushing or pulling while standing. [T. 424-35]. Dr. Neslen indicated that the

recommended treatment for this condition was a home exercise program, and that possible future treatment included synvisc injections and/or a total knee replacement.  [T. 441].

The Plaintiff has a history of gastroesophogeal reflux disease (GERD) with hiatal hernia.  She was hospitalized in September 2004 due to abdominal pain and some burning with urination.   She was diagnosed with sigmoid diverticulitis.  Plaintiff was hospitalized again in July 2005 for recurrent GERD symptoms.  She underwent laparoscopic surgery for the removal of her gall bladder (cholecystectomy) and a surgical procedure to help alleviate her GERD (Nissen fundoplication).  There were no noted complications, and her symptoms were improved as of discharge.  An examination performed in August 2005 revealed smooth tapering of the distal esophagus and no reflux. [T. 273-77, 298-316, 340].

Barbara Dubiel, M.D. evaluated the Plaintiff for Disability Determination Services (DDS) on March 18, 2008.  [T. 393-400, 446].  In her examination notes, Dr. Dubiel noted that Plaintiff sat in the waiting room for at least forty minutes filling out paperwork, but that immediately upon entering the examination room and intermittently thereafter, complained of pain upon sitting and left leg weight bearing.  [T. 397].  Dr. Dubiel further noted that Plaintiff's left knee strength was 5/5.  While Plaintiff reported being unable to

forward flex, it was noted that she did so twice in the waiting room in order to lift her purse.  She declined to cooperate with a number of tests due to pain. [T. 398].

Dr. Dubiel assessed Plaintiff with GERD, depression by history although euthymic on exam, frequent headaches, chronic insomnia, and fibromyalgia. She also assessed chronic lower back pain post surgery with improvement. She noted chronic knee pain probably with some elements of osteoarthritis, but opined that most responses were non-physiologic and that the most impressive aspect of the knee examination was a small effusion bilaterally. [T. 399].  In a "Capability Statement," Dr. Dubiel indicated that

> based on her [ ] behavior in the waiting room, there is at most a mild impairment in the ability to sit and by extension to travel.  There is no impairment in the ability to . . . handle small objects.  The multiple nonphysiologic responses during the exam make it difficult to estimate other impairments.

She opined that the Plaintiff had at least a mild impairment in walking and standing, and a mild to moderate impairment in carrying but none in lifting from a stationary position.  [T. 400].

Andrew Bernish, SDM[1] assessed the Plaintiff's residual functional capacity (RFC) for DDS on June 8, 2006.  He assessed her as being capable

_____

[1]SDM is an acronym for Single Decision Maker, a person with no medical credentials.

of light work limited to occasional pushing/pulling with the left lower extremity. [T. 369-76]. On August 19, 2006, Dorothy Linster, M.D. reviewed all of the evidence in the file to date and affirmed this RFC assessment. [T. 383].

At the ALJ hearing, Plaintiff testified that she did not drive much because of numbness in her feet and that she did not leave her house for weeks at a time. She stated that she goes to the store monthly. [T. 42]. Plaintiff testified that her left leg gives out and that she uses a cane on her right side. [T. 53-4]. She admitted that she can walk some without the cane. [T. 57]. Plaintiff testified that she can only sit 20 to 25 minutes at a time due to back pain. [T. 57]. She stated that she cannot climb steps, can twist very little, and has balance problems. [T. 58]. She reported being able to stand for about 20 minutes at a time. [T. 61]. She stated that she is able to walk about 100 feet, but that for further distances, she has to sit down intermittently and rest. [T. 65]. Plaintiff stated that she has to elevate her legs every 30 to 45 minutes due to swelling. [T. 59]. She reported having to use a shower chair and stated that she cannot wear regular shoes due to swelling. [T. 60].

Plaintiff rated her pain as seven on a one-to-ten scale. [T. 61]. She stated that she has problems sleeping due to pain. Plaintiff testified that when her pain is not severe, she has to use Darvocet, which makes her forgetful and confused. [T. 55, 59]. She further testified that when her pain is severe,

which she estimated occurs approximately two weeks out of the month, she has to use Vicodin every four hours.  [T. 55, 57].

Plaintiff reported that her daily activities include watching birds, microwaving her meals, and bathing.  She does not visit with friends, but occasionally goes out to eat with her fiancé.  [T. 67].

A vocational expert (VE) also testified at the ALJ hearing.  In response to a hypothetical that assumed an individual with Plaintiff's age, education, work capacity, and RFC, the VE testified that such an individual would be able to perform Plaintiff's past relevant work as a fast food worker.  Alternatively, the VE testified there was other work that such an individual could perform, including a bench assembler, officer helper, and final inspector.  [T. 74-75].

## V.    THE ALJ'S DECISION

On February 20, 2008, the ALJ issued a decision denying the Plaintiff's claim.  [Tr. 16-23].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had a date last insured of December 31, 2011, and that she had not engaged in any substantial gainful activity since November 21, 2005, her alleged onset date.  [Tr. 12].  The ALJ then found that the medical evidence established the following as severe impairments: status post left knee surgery times two, degenerative joint disease, back pain, and GERD.  [Id.].  The ALJ concluded that her impairments did not meet or equal a listing.

[Id.].  He then assessed Plaintiff's residual functional capacity and determined

that she retains the capacity to perform light work with limitations of no

climbing, occasional pushing/pulling with the left leg, crawling, crouching and

balancing; frequent stooping; and avoidance of concentrated exposure to

extreme temperature, wetness, humidity, vibration and hazards.  [T. 12-13].

In light of this RFC, the ALJ found that Plaintiff still could perform her past

relevant work.  [T. 16].  Accordingly, the ALJ concluded that the Plaintiff was

not "disabled" as defined by the Social Security Act from the alleged onset

date of November 21, 2005.  [T. 17].

## VI.   DISCUSSION

Plaintiff argues that the ALJ improperly evaluated the opinion of her

treating physician Dr. Neslen, failed at step four to give a reasoned evaluation

of her exertional limitations, and improperly evaluated her pain and symptoms.

## A.   The ALJ properly assessed the medical source evidence and his findings are supported by substantial evidence.

Plaintiff challenges the ALJ's evaluation of Dr. Neslen's opinion,

asserting that his assessment is entitled to great, if not controlling, weight.

Regulations dictate the ALJ's process for evaluating medical source

evidence:

> Regardless of its source, we will evaluate every
> medical opinion we receive.  Unless we give a
> treating source's opinion controlling weight under

paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d).

The RFC is comprised of findings about Plaintiff's capacity to perform physical and mental work functions. SSR 96-8p. An ALJ's opinion on RFC must be based on evidence from some accepted medical source; the ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

In the present case, the ALJ rejected Dr. Neslen's disability opinion, reasoning that his opinion was not supported by any medically acceptable and laboratory diagnostic techniques and was inconsistent with the other evidence of record, including his own treatment notes. [T. 16]. There is substantial evidence to support the ALJ's finding. Dr. Neslen's treatment notes consist almost entirely of Plaintiff's subjective complaints, and the three physical examinations he did perform do not indicate any objective deficits.

Furthermore, the treatment notes of record demonstrate that the Plaintiff made statements designed to avoid recommended treatment or that otherwise demonstrate non-compliance with prescribed treatment. The record provides substantial evidence for the ALJ's finding that Dr. Neslen's disability opinion is neither objectively supported nor consistent with the longitudinal record.

Substantial evidence supports the ALJ's choice to afford no weight to the opinion of Dr. Neslen. Therefore, this assignment of error is overruled.

**B. The ALJ's analysis of Plaintiff's Residual Functional Capacity (RFC) at step four followed applicable law and was supported by substantial evidence.**

Plaintiff next asserts that the ALJ erred in failing to make a function-by-function analysis of her capabilities, as required by Social Security Rule 96-8p, which requires that an ALJ's decision describe "the maximum amount of each work-related activity the individual can perform" based on the individual's exertional and non-exertional limitations. Specifically, Plaintiff argues that in finding that she could perform light work, the ALJ failed to provide the maximum amount of time that she is able to lift, carry, sit, walk or stand.

Plaintiff's argument is without merit. The ALJ found that Plaintiff could perform light as work "as defined in 20 C.F.R. § 416.1567(b), except pushing/pulling is limited to occasional with the left lower extremity; no climbing of ladders, ropes, or scaffolds; frequent stooping; occasional climbing

of ramps or stairs, crawling, crouching, and balancing; avoidance of concentrated exposure to extreme cold and heat, wetness, humidity, vibration, and hazards (machinery, heights, etc.)." [T. 12-13]. This finding establishes that Plaintiff's ability to lift, carry, sit, walk, and stand in accordance with the full range of light work was not limited, and thus she was capable of lifting and carrying no more than twenty pounds occasionally and ten pounds frequently; sitting and standing for six hours in an eight hour workday; and sitting intermittently during the remaining two hours. See 20 C.F.R. § 416.967(b); Social Security Ruling 83-10. Plaintiff's claim that the ALJ did not determine her capacities as to lifting, carrying, sitting, walking or standing is, therefore, incorrect.

Next, Plaintiff argues that the evidence of record establishes that she is limited to performing sedentary work, as opposed to performing a range of light work, as found by the ALJ. Plaintiff is mistaken.

In assessing Plaintiff's RFC, the ALJ gave significant weight to the opinion rendered by Dr. Linster, the DDS physician, who opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and sit, stand, and walk each for six hours in an eight hour workday [T. 370, 383], abilities which are consistent with the demands of light work. See 20 C.F.R. § 404.1567(b); SSR 83-10. Plaintiff argues that the ALJ erred in relying upon

Dr. Linster's opinion because it lacked adequate support. Specifically, she argues that Dr. Linster's opinion that she could perform the requirements of light work was based upon, in part, the progress of her rehabilitation, as well as the recommendations of her orthopedist [T. 376, 383]. Plaintiff argues that the "recommendations" to which Dr. Linster was referring were a possible synvisc injection and a possible total knee replacement surgery, recommendations which Plaintiff claims are not consistent with the ability to perform light work.

It is clear, however, that Dr. Linster was referring to the recommendation that Plaintiff continue physical therapy, particularly exercises and walking [T. 441], a recommendation which is inconsistent with Plaintiff's claim that she is disabled. Indeed, Dr. Linster noted that the synvisc injection and knee replacement surgery were not "recommendations," but, rather, just possible treatment that Plaintiff may undergo in the future. [T. 352, 376, 383]. This argument, therefore is without merit.

Plaintiff further argues that the ALJ erred in relying upon Dr. Linster's opinion, as Dr. Linster did not have the benefit of the entire evidence of record when rendering her opinion on August 19, 2006. Specifically, Plaintiff notes that Dr. Linster did not have the benefit of the evidence regarding her back pain after that date, or any evidence of her knee pain not improving after her

second surgery. Additionally, Plaintiff notes that the Dr. Linster based her opinion, in part, on the fact that Plaintiff was walking regularly for exercise, but that, subsequent to Dr. Linster rendering her opinion, Plaintiff's ability to walk diminished. As Plaintiff contends that this subsequent evidence is inconsistent with a finding that she could perform light work, the fact that Dr. Linster could not evaluate this evidence renders her opinion irrelevant.

The ALJ is not precluded from relying upon the opinion of a DDS physician who did not have the benefit of the entire evidence of record if another medical source had access to the evidence that the DDS physician did not review and nonetheless renders an assessment that is consistent with the DDS physician's opinion. See Gomes v. Astrue, CA No. 08-233 S, 2009 WL 4015595, at *9 (D.R.I. Nov. 19, 2009). In the present case, Dr. Dubiel performed a subsequent consultative evaluation of Plaintiff and, in so doing, considered the above-mentioned evidence that was not available to Dr. Linster. [T. 393-400]. Having considered this evidence, Dr. Dubiel nonetheless concluded that Plaintiff had almost entirely mild limitations (with only one mild-to-moderate limitation), which is entirely consistent with Dr. Linster's opinion that Plaintiff could perform the requirements of light work. The ALJ, therefore, did not err in relying upon Dr. Linster's opinion in assessing Plaintiff's RFC.

Plaintiff contends, however, that Dr. Dubiel's finding of "at least a mild impairment in the ability to stand and walk" is more consistent with the requirements of sedentary, rather than light, work. Contrary to Plaintiff's contentions, Dr. Dubiel's finding of these mild limitations is not inconsistent with a RFC to perform a range of light work. See Mattison v. Astrue, No. 09-C-60, 2009 WL 2591628, at *23 (E.D. Wis. Aug. 21, 2009). As the ALJ conducted a thorough review of Dr. Dubiel's consultative evaluation findings and reasonably concluded that these findings supported a determination that Plaintiff could perform a range of light work, this Court will not disturb the ALJ's analysis of this evidence. See id.

Plaintiff further claims that the ALJ should have limited her to sedentary work based upon the subjective complaints that she made to Dr. Neslen to the effect that she has "a lot of trouble with her legs" and that she could not walk due to swelling in her knee [T. 342, 352]. As discussed in greater detail below, however, the ALJ found that Plaintiff's subjective complaints were not credible, and the Court finds that there is substantial evidence to support this finding. As such, the ALJ did not err in failing to include any limitations in his RFC assessment reflecting Plaintiff's subjective complaints.

For the foregoing reasons, the Court concludes that the ALJ's analysis of Plaintiff's RFC followed the applicable law and is supported by substantial

evidence.

**C**.     **The ALJ's analysis of Plaintiff's pain and symptoms followed applicable law and is supported by substantial evidence.**

In her third assignment of error, Plaintiff argues that the ALJ improperly evaluated her complaints of pain and symptoms.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996) (citing 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). Second, if there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1)).

Having found that the Plaintiff suffered from severe impairments which could reasonably be expected to cause the type of pain and other symptoms alleged, the ALJ proceeded to analyze the evidence presented by Plaintiff relating to her pain and limitations. In so doing, the ALJ identified numerous inconsistences between the reported severity of Plaintiff's limitations and the objective medical findings of record. [T. 13-15]. The ALJ engaged in an

extensive discussion of the inconsistencies in Plaintiff's own reports.  [Id.].
The medical records are replete with examples of Plaintiff's contradictory
statements and behaviors, including her non-compliance in taking medication
and her attempts to avoid certain recommended treatments, such as physical
therapy.  "In considering the credibility of the claimant's subjective allegations
of pain, the ALJ must consider (factors which include) the extensiveness of
the attempts (medical or nonmedical) to obtain relief...." McKenney v. Apfel,
38 F.Supp.2d 1249, 1259 (D. Kan. 1999)(citing Hargis v. Sullivan, 945 F.2d
1482, 1490 (10th Cir. 1991)).

"Because he had the opportunity to observe the demeanor and to
determine the credibility of the claimant, the ALJ's observations concerning
these questions are to be given great weight." Shively v. Heckler, 739 F.2d
987, 989 (4th Cir. 1984).  Plaintiff points to no evidence that reconciles the
inconsistencies found by the ALJ, and there is ample support in the record for
his findings of fact.  Given the deference due to the ALJ's credibility
determination, the Court finds the ALJ's analysis of pain and symptoms at
step four to have followed applicable law and to be supported by substantial
evidence.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset to the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 30, 2011

Martin Reidinger
United States District Judge